1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

9    Robert Allen Poyson,                    No. 21-8259-PCT-DLR

10                       Petitioner,         <u>DEATH-PENALTY CASE</u>

11   v.                                      **ORDER**

12   David Shinn,

13                       Respondent.

14          Petitioner Robert Allen Poyson, an Arizona death row inmate, has filed a second-

15   in-time Petition for Writ of Habeas Corpus. (Doc. 1.) The Court ordered Respondent to file

16   a response to Poyson's argument that the petition was not a second or successive petition

17   requiring authorization from the Ninth Circuit under 28 U.S.C. § 2244(b)(3)(A).

18   Respondent filed a motion to dismiss, and Poyson filed a reply in opposition. (Docs. 6, 7.)

19   **I.    Background**

20          In 1998 a jury convicted defendant Poyson on three counts of first-degree murder,

21   one count of conspiracy to commit first-degree murder, and one count of armed robbery.

22   *State v. Poyson ("Poyson I")*, 198 Ariz. 70, 73, 7 P.3d 79, 82 (2000). The trial court

23   sentenced him to death for the murders and to terms of imprisonment for the other offenses.

24   *Id.* The death sentence was supported by three aggravating factors: that each of the murders

25   was committed in expectation of pecuniary gain, *see* A.R.S. § 13–703(F)(5); that two of

26   the murders were especially cruel, *see id.* § 13–703(F)(6); and that Poyson was convicted

27

28

1    of multiple homicides committed during the same offense, *see id.* § 13–703(F)(8).[1] *Poyson*

2    *I*, 198 Ariz. at 78, 7 P.3d at 87. Finding only one mitigating factor, cooperation with law

3    enforcement, the trial court sentenced Poyson to death.[2] *Id.* at 73, 81, 7 P.3d at 82, 90.

4         The Arizona Supreme Court affirmed Poyson's convictions. *Id.* at 83, 7 P.2d at 92.

5    On independent review, the court found additional mitigating factors—age, family support,

6    and potential for rehabilitation—but nevertheless upheld Poyson's death sentence because

7    the mitigating evidence was not sufficiently substantial to call for leniency. *Id.* at 82, 7 P.3d

8    at 91.

9         In 2010, the district court entered judgment denying Poyson's Amended Petition for

10   Writ of Habeas Corpus. *Poyson v. Ryan (Poyson II)*, 685 F. Supp. 2d 956 (D. Ariz. 2010).

11   In 2018, the Ninth Circuit Court of Appeals reversed, holding that "the Arizona Supreme

12   Court denied Poyson his Eighth Amendment right to individualized sentencing by applying

13   an unconstitutional causal nexus test to his mitigating evidence of a troubled childhood and

14   mental health issues." *Poyson v. Ryan (Poyson III)*, 879 F.3d 875, 879 (9th Cir. 2018).

15        The Ninth Circuit remanded the petition to the district court "with instructions to

16   grant the writ with respect to Poyson's sentence unless the state, within a reasonable period,

17   either corrects the constitutional error in his death sentence or vacates the sentence and

18   imposes a lesser sentence consistent with law." *Poyson III*, 879 F.3d at 896. The Ninth

19   Circuit did not reach Poyson's contention that he was entitled to a new sentencing

20

21   _____

22        [1] The Court refers to Arizona's statutes in effect at the time of Petitioner's

23   sentencing. Arizona's capital sentencing statutes have since been renumbered. *See* A.R.S.
     §§ 13-751–59.

24        [2] At the time of Poyson's trial, Arizona law required trial judges to make all factual

25   findings relevant to the death penalty and to determine the sentence. Following the United
     States Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), which held that

26   a jury must determine the existence of facts rendering a defendant eligible for the death
     penalty, Arizona's sentencing scheme was amended to provide for jury determination of

27   eligibility factors, mitigating circumstances, and sentence.

28

1   proceeding before a jury. *Id.* The district court granted the writ. (Case No. 04-534-PHX-
2   NVW, Doc. 92.)

3          The Arizona Supreme Court granted the State's motion to conduct a new
4   independent review, declined to consider any new evidence developed after the original
5   proceedings, and affirmed Poyson's death sentences. *State v. Poyson (Poyson IV)*, 250
6   Ariz. 48, 50, 52, 475 P.3d 293, 295, 297 (2020). Poyson sought review of that decision via
7   a petition for certiorari in the United States Supreme Court, which the Court denied on
8   October 4, 2021.

9          Poyson filed the pending second-in-time petition on December 7, 2021. (Doc. 1.)

10  **II.    Analysis**

11         The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes
12  significant burdens on petitioners who try to raise new claims in a "second or successive"
13  habeas petition. *See Burton v. Stewart*, 549 U.S. 147, 152–53 (2007) (per curiam). First, a
14  district court must dismiss any claim presented in a second or successive habeas petition
15  that was presented in a prior petition. 28 U.S.C. § 2244(b)(1). Second, a new claim not
16  raised in a prior petition also must be dismissed unless (1) the claim rests on a new,
17  retroactive rule of constitutional law, or (2) the factual basis of the claim was not previously
18  discoverable through due diligence and the new facts establish by clear and convincing
19  evidence that no reasonable factfinder would have found the applicant guilty of the
20  underlying offense. 28 U.S.C. § 2244(b)(2). Even in the latter circumstance, leave of the
21  court of appeals is required before the successive petition may be pursued in a district court.
22  28 U.S.C. § 2244(b)(3)(A). These requirements are jurisdictional and cannot be waived.
23  *Burton*, 549 U.S. at 157.

24         The instant petition is a "second-in-time" petition, challenging the same conviction
25  for which Poyson previously sought federal habeas relief. Poyson has neither requested nor
26  obtained permission from the Ninth Circuit to file a second or successive petition.
27  However, this does not end the inquiry.

28

In *Magwood v. Patterson*, 561 U.S. 320 (2010), the Supreme Court held that a second-in-time petition challenging a judgment imposed after resentencing was not "second or successive" under § 2244(b)(2) where the first petition was filed prior to resentencing and challenged the original judgment. Thus, where there is a "new judgment intervening between the two habeas petitions," the latter petition challenging the new judgment is not second or successive. *Id.* at 341 (quoting *Burton*, 549 U.S. at 156).

The parties disagree about whether the Arizona Supreme Court's independent review resulted in a new, intervening judgment. The Court need not reach this issue, however, because, even if there was no intervening judgment, the claims in Poyson's second-in-time petition were not ripe for review until the Arizona Supreme Court issued its 2020 decision affirming the death sentences.

The Supreme Court "has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application." *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007). In *Panetti*, for example, the Court held that competency-to-be-executed claims are exempt from AEDPA's limitation on second or successive petitions because such claims generally are not ripe until after the time has run to file a first habeas petition. *Id.* at 947; *see also Slack v. McDaniel*, 529 U.S. 473, 478 (2000) (declining to apply § 2244(b) to a second petition where the first was dismissed for lack of exhaustion).

The Ninth Circuit has acknowledged that the reasoning of *Panetti* is not limited to competency-for-execution claims. In *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011), the court observed that "[p]risoners may file second-in-time petitions based on events that do not occur until a first petition is concluded" if the claims raised therein "were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding." In *United States v. Lopez*, 577 F.3d 1053, 1064 (9th Cir. 2009), the court held that the factors identified by the Supreme Court in *Panetti* "must be considered in deciding whether other types of claims that do not survive a literal reading of AEDPA's gatekeeping

requirements may nonetheless be addressed on the merits." These considerations are "(1) the implications for habeas practice of reading 'second or successive' literally for such claims, (2) whether barring such claims would advance the policies behind AEDPA's passage and (3) the Court's pre- and post-AEDPA habeas jurisprudence, including the common law abuse-of-the-writ doctrine." *Id.* at 1056 (citing *Panetti*, 551 U.S. at 943–46). "The [*Panetti*] Court cautioned against interpreting AEDPA's 'second or successive' provisions in a way that would foreclose any federal review of a constitutional claim, or otherwise lead to perverse results, absent a clear indication that Congress intended that result." *Id.* at 1063.

Circuit courts have allowed prisoners to file second petitions "relating to denial of parole, revocation of a suspended sentence, and the like because such claims were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding." *Buenrostro*, 638 F.3d at 725; *see also Hill v. Alaska*, 297 F.3d 895, 898 (9th Cir. 2002) (declining to find petition successive "if the prisoner did not have an opportunity to challenge the state's conduct in a prior petition"); *Walker v. Roth*, 133 F.3d 454, 455 (7th Cir. 1997) (per curiam) ("None of these new claims were raised in his first petition, nor could they have been; [the petitioner] is attempting to challenge the constitutionality of a proceeding which obviously occurred after he filed, and obtained relief, in his first habeas petition.").

Poyson raises claims arising from events that occurred after the issuance of the conditional writ. The second-in-time petition raises the following claims: (1) the Arizona Supreme Court applied an unconstitutional causal-nexus test to non-statutory mitigating evidence concerning his mental health and dysfunctional childhood background; (2) the Arizona Supreme Court failed to independently review the statutory aggravating circumstances; (3) the Arizona Supreme Court failed to consider evidence that Poyson suffers from Fetal Alcohol Spectrum Disorder (FASD); and (4) the cumulative prejudicial effect of the errors committed by the Arizona Supreme Court had a substantial and injurious effect or influence on the sentencing outcome. (Doc. 1 at 29, 42, 49, 55.) None

1   of these claims could have been raised in Poyson's first habeas petition. The factual
2   predicate for the claims did not arise until after the Arizona Supreme Court conducted a
3   new independent sentencing review in response to the district court's issuance of a
4   conditional writ in the first habeas proceeding.

5       Because the claims in Poyson's second-in-time habeas petition could not have been
6   included in his first petition, they are not second or successive and he "is not obliged to
7   secure [the Ninth Circuit's] permission prior to filing his habeas petition in the district
8   court." *Hill*, 297 F.3d at 899; *see also Styers v. Ryan*, No. CV-12-2332-PHX-JAT, 2013
9   WL 1775981, at *5 (D. Ariz. Apr. 25, 2013) ("The factual predicate for these claims did
10  not arise until after the Arizona Supreme Court conducted a new independent sentencing
11  review in response to the district court's issuance of a conditional writ in the first habeas
12  proceeding."); *Hedlund v. Shinn*, No. CV-19-05751-PHX-DLR, 2020 WL 4933629, at *5
13  (D. Ariz. Aug. 24, 2020) (same).

14      In *Styers* and *Hedlund*, the Arizona Supreme Court independently resentenced the
15  petitioners after the Ninth Circuit found *Eddings* error and the district court granted a
16  conditional writ. Just as the court found in those case, the claims in Poyson's second-in
17  time petition, arising from the new sentencing decision, "could not have been included in
18  [his first petition." *Hedlund*, 2020 WL 4933629, at *5. Therefore, they are not second or
19  successive and Poyson is not required to obtain authorization from the Ninth Circuit to file
20  his habeas petition in this court. *See id.* (quoting *Hill*, 297 F.3d at 899).

21      Respondents move to dismiss the petition under Rule 9(b) of the Rules Governing
22  Section 2254 Cases, as an "abuse of the writ." (Doc. 6 at 8.) They argue, citing Justice
23  Kennedy's dissent in *Magwood*, 561 U.S. at 349, that "[w]hether Poyson raises individual
24  claims that could not have been raised previously is immaterial because the court is to look
25  at the judgment from which the petition seeks relief and not review the petition claim by
26  claim." (*Id.* at 7.)

27      *Magwood* addressed the question of "when a claim should be deemed to arise in a
28  'second or successive habeas corpus application.'" 561 U.S. at 330 (citing 28 U.S.C. §§

2244(b)(1), (2)). Only when the application is second or successive must a petitioner seek leave from the court of appeals before filing it with the district court. *Id.* at 331 (citing 28 U.S.C. § 2244(b)(3)(A)). By definition, however, if the application, or petition, is not second or successive, it is "not subject to § 2244(b) at all." *See id.* at 331. Thus, it is irrelevant whether the Court reviews Poyson's second-in-time petition in its entirety or each claim individually, because § 2244(b) simply does not apply to claims that were unripe at the time of filing of the first petition or application. *See id.* at 331–32. (citing *Panetti*, 551 U.S. at 944, 947; *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643 (1998); *Slack v. McDaniel*, 529 U.S. 473, 478, 487 (2000)).

The *Panetti* factors favor a conclusion that Poyson's petition is not second or successive. Reading the "second or successive" provisions literally would foreclose federal court review of a state court's new independent review of a death sentence that followed the filing of a first federal habeas petition. Poyson would have no way to challenge any constitutional violation that occurred in the Arizona Supreme Court's 2020 independent review of his death sentence. Nor would barring the petition further AEDPA's requirement that a petitioner assert all claims that can be raised at the time of the petition. *See Mitchell v. United States*, No. CR0101062001PCTDGC, 2020 WL 4940909, at *3 (D. Ariz. Aug. 22, 2020).

Finally, Respondents contend that Poyson's second-in-time petition simply repeats the meritless arguments made in his prior petition. (Doc. 6 at 8–9. ) The Court has already addressed the contention that the claims have been previously raised. As for the validity of the claims, "we must not confuse lack of substantive merit with lack of jurisdiction." *Mitchell*, 2020 WL 4940909, at *3 n.3 (quoting *Garza v. Lappin*, 253 F.3d 918, 923 (7th Cir. 2001)).

Based on the foregoing,

**IT IS ORDERED denying** Respondents' motion to dismiss. (Doc. 6.)

1

**IT IS FURTHER ORDERED** that Respondents shall file an answer to Poyson's

2
petition no later than **September 27, 2022**. Poyson shall file his reply no later than **October**

3
**25, 2022**.

4
Dated this 1st day of August, 2022.

5

6

7

8
_____
Douglas L. Rayes

9
United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28